Next case this afternoon is Crim v. Dietrich, 417-0864. For the appellant is Craig Unrath. For the appellee is Matthew Axelrod. David Axelrod. David Axelrod, I'm sorry. The note I just got him, incorrect. It may be my son. Okay. You may proceed. Good afternoon, Your Honor. We have two fundamental rules of law at issue in this case. The first is that we all know that to preserve an issue for review in a jury trial, you must file a post-trial motion. And the reason for that is simple. Public policy favors correction of errors at the trial level. The second rule is that there is no need to file a post-trial motion where an issue has been disposed of by directed verdict. And the reason for that, again, is also simple, because once a directed verdict is issued, the judge effectively takes this case out of the realm of the rules of the jury trials. A plaintiff would have this court adopt an entirely new rule of law, one that has never been recognized by any court. They claim that no post-trial motion is required. No post-trial motion is needed to preserve an issue for appellate review if the trial court disposed of a separate issue, a separate claim, by directed verdict. Now, we submit that adopting that rule lies in direct conflict with public policy of this state as well as directly contradicts the Section 2-1202 of the Code of Civil Procedure. As a matter of fact, I believe that this court would have no choice but to rewrite Section 2-1202 of the Code of Civil Procedure. And the question that is posed here is why. Why should the court do that in this case? Now, there's another question that is directed toward a plaintiff's counsel. Why not? Why not file a post-trial motion following a jury verdict? If you believe that there have been errors that gave rise to a jury's verdict, then why would you not want to bring those errors to the attention of the trial court? Why would you not want to give the trial court a chance to correct those errors in the first instance? Is that asking too much? Is that placing too much of a burden on a party to merely ask the trial court to review errors in the jury's verdict? Now, their opening brief in this appeal began with a statement that while this case was tried to verdict, this appeal is not based upon the verdict of a jury. This appeal reviews the trial court's order granting a partial directed verdict on the plaintiff's theory of informed consent. That statement is true. They never raised a single argument anywhere in their brief suggesting that the trial court erred or the jury erred in rendering its verdict or that there were any trial errors that resulted in that verdict. Their prayer for relief did not ask for a new trial based on that jury's verdict. Well, Mr. Roney, something I meant to mention to you, you were here the first time, and to the plaintiffs, I wrote the original decision, and it has been a somewhat humbling experience for yours truly because I realize that in retrospect perhaps I should have been more clear and I made things difficult for the trial court and for all the parties. So let me go back to the original decision where we reversed the grant of the directed verdict. The jury had returned a verdict in favor of the defendant on count two, the general negligence count, right? Yes, professional negligence. Okay. Now, what had happened is that the court at the original trial instructed the jury that the issues pertaining to the care provided prior to delivery of cow and crib are no longer an issue in this case, and you should not speculate as to the reason why these issues are no longer an issue in this case. The trial court on remand is wrestling with this and thinking, well, what was remand for a new trial? Should there be a new trial with regard to the negligence count because the directed verdict, which we held the court erred by granting, shouldn't have been granted, and this was an instruction from the trial court to the jury about essentially the directed verdict. Well, you don't have that in front of you anymore, ladies and gentlemen. So I suppose the question is in the trial court's judgment and ours now, and maybe I should have addressed this more clearly. Why wouldn't the jury be susceptible to viewing this instruction as kind of, what did the doctor know about the size of the child to be born? Did the doctor disregard that information? Did that lead to some negligence on the doctor's part? But the jury, if I understand this record, maybe the jury could have viewed this instruction saying, no, we have to disregard all that prior to the birth itself. That's my concern here, and I'm just wondering, you raised an excellent point, and I'm going to want to hear from the plaintiff about it. Well, why don't you file a post-trial motion and identify this? But setting that aside for just a moment, and I don't mean to disregard its significance, but on the merits here, this instruction and to the extent it might have prejudiced the jury's assessment of the negligence count. What about that? Your Honor, from the very beginning, the plaintiff's alleged made a number of allegations regarding pre-delivery tests that they believe should have been performed, and that those tests, had they been performed, would have led to results that would have allowed the doctor to more accurately inform the plaintiff of the risks of natural childbirth. And that's always been their contention. They have never suggested anywhere at the original trial that these allegations of a failure to perform tests had any connection at all with the actual delivery of the child. And if you'll note, the two allegations involving delivery involved inappropriate traction. Too much force was used in the delivery of the child. Well, aren't those claims connected to pre-birth circumstances, knowledge of the doctor, what the doctor should have done or should have known, and all the rest of that, which arguably the judge said you should disregard? In my brief, I argued that they never once argued that there was any error in the jury's verdict. They never said it was against the manifest way to the evidence. They never said that there were trial errors. They just completely abandoned the issue. And I was wrong to say that. You look at page 11 and 12 of their appellee's brief, and they clearly lay out precisely what you're talking about here, Your Honor. Which brief are you referring to? The appellee's brief where, for the very first time, they link the failure to perform tests pre-delivery with the actual negligence of the delivery itself. As a matter of fact, what they say here is, by depriving plaintiffs of the necessary underlying evidence, they were unable to fully argue the remaining theory to the jury. Okay, that's how they conclude that. Where is that, on page 12? I believe you'll find that on page 12. So when I said that they have never called into question errors that occurred in the jury trial, that's incorrect, Your Honor. Now, you may recall when the... Wait a second. When you say that's incorrect, are you saying it's the first time in the brief here? Yes. As opposed to the trial court, the original trial, or the first brief to the court? That's correct. But for the very first time in the second appeal, now for the very first time we have plaintiffs suggesting that there were errors in the jury trial that affected the jury's result. Is my understanding correct that in the first appeal, they attacked the granting of the motion for directed verdict, which we ultimately agreed with? Did they raise this question in the first appeal? No, they did not. Not at all. The first appeal was focused on a single issue. Is expert testimony required? And that's from the St. Jem case, and I really very much appreciate this Court clarifying that issue once and for all. I was so tired of dealing with that case. However, getting back to the point, from when the trial court granted directed verdict, he dismissed subparagraphs A through J. And two of those mentioned failure to inform, but the other paragraphs say, failed to run tests. And I'd always wondered, well, is that part of the, they'd always taken the position that those allegations were part of the failure to inform. Now, you look at page two of the brief filed in this, that we're dealing with right now, and they confirm that. They say these were the allegations we made to support the claim for informed consent. So we're hearing this now for the very first time, and here's the question I ask. When the Court said, I believe I have to follow St. Jem, expert testimony is required, I'm going to take subparagraphs A through J, and I'm going to strike those and inform the jury not to consider them, why didn't the plaintiff object to that? Why didn't the plaintiff say, Your Honor, I agree, or, you know, I disagree with your ruling that expert testimony is required, but nevertheless, we still need these allegations to go in front of the jury. Why didn't they say that? And when the jury read it. So that wasn't made clear in the first trial? There was no objection. They said, Your Honor, we object to the directed verdict, but they never said we would like you to preserve some of these subparagraphs that allege failure to run tests. So the Court blindly went into this. They objected, however, to the instruction given by the trial court. The instruction? Disregard allegations concerning informed consent. They said A through J, and what they objected to was they objected to the directed verdict on the basis that expert testimony was required. Never once, if you read the transcript, I have it sitting right at counsel table, never once did they suggest that, Your Honor, you can eliminate informed consent, but you have to leave these allegations of a failure to perform tests. They never asked that the Court do that. Well, I thought the Court gave an instruction to the jury. Yes. And they objected to that instruction, didn't they? A general instruction. You mean a general objection? It was a general objection. I'm sorry, Ron. There was no specific objection saying that we want to maintain the allegations for failure to perform tests. They never said that. All they did was say we object to the directed verdict, we object to informing the jury that this issue is no longer there. Let me make, pause a minute there, because I, like, excuse me, Justice Stern, I want to make sure I understand this. The trial court grants your request for a directed verdict. This is after all the evidence has been presented, right? Yes, from the end of the closure plaintiff's case. End of the closure, and it's at your request that the Court then instructs the jury with regard to the dismissed count and the evidence pertaining to it? I don't recall who made the request. What I do recall is that the judge agreed with us, that expert testimony was required, which we now know was wrong, and the Court then announced, this is the instruction I'm going to give to the jury. Okay, so the Court. It was an IPI instruction. This is an IPI instruction? He said so in the transcript. So the Court essentially, so as the plaintiff comes up with this, saying given that I'm going to dismiss the directed, I'm going to grant the directed verdict because of the absence of expert testimony, now this is what I'm going to say, essentially apparently thinking that this was an A through J, and the argument in front of us now, as I just mentioned as you cited in the brief, is that this is too broad. That is, the issues pertaining to the care provided prior to delivery of color and crime are no longer an issue in this case. You should not speculate as to why not. That that was too broad because it covered negligence issues pertaining to the general negligence count of medical malpractice, but you're, I want to make sure I understand this, you're claiming that their objection to this was, if I understand you correctly, essentially, well, you shouldn't grant the motion for directed verdict. That's correct. But there was no further explanation from the plaintiff saying, yes, and by the way, the jury is going to be hearing this and this could affect our second count or the medical negligence count because there's evidence that the jury heard that might pertain to that, which is essentially the argument they're making. That is correct. They never said, your honor, even if you must direct a verdict, you still must retain the failure to conduct tests. That should be, the jury should be allowed to consider that. So this is a forfeiture argument, essentially, based upon that, and their failure to file a post-trial motion after jury trial, which is necessary to preserve the issues with regard to medical negligence. Precisely. Precisely. Now, because there was no specific objection, they probably waived this for post-trial motion. However, that's up to the trial court to determine whether or not it was general or specific or not. In either case, they should have filed a post-trial motion stating those allegations of failure to perform tests should have been maintained. In spite of the fact that a directed verdict was issued, we need those allegations to support our claim that went to the jury. So if I understand your argument, again, I'm fighting through this, Mr. Underwood. I understand. Please bear with me. It's essentially saying that this error, such as it was, they should have filed a post-trial motion to raise this question and to preserve this issue, even if their objection should have been more specific, but they were required to file a post-trial motion in any event because they lost the jury trial. And that we – it doesn't matter whatever our reversal on the directed verdict count, that we should not be considering further the negligence counts because they were forfeited because of a failure to file a post-trial motion. Yes, you're right, Your Honor. That's correct. That's my point. And if I understand further, your argument is there's no precedent for permitting review after a verdict by a jury in a jury trial against the party to go back and do it again without filing a post-trial motion. That is my precise argument. And it's statutorily required. It's statutorily required. It's also required under the doctrine of law of the case. But the point is this, Your Honor. Public policy favors resolving these issues at the trial level and they objected when the jury instruction went out specifically saying, we want you to maintain some of these allegations. Don't strike them all. That's one point. But, again, they could have filed a post-trial motion. And at that point, whether it is the objection specific or not, that judge could have decided that issue and potentially issued a J&OB or issued a new jury trial on the negligence issue. In either case, had that post-trial motion been filed, those issues all would have gone up to this court and this court could have decided whether a specific objection was filed. Are you also arguing a forfeiture by the plaintiffs for not raising this issue in the initial appeal? Absolutely, Your Honor. And placing in their introductory statement that they were not going to address any issues involving professional negligence. So this was no oversight? No, it was an intentional, voluntary relinquishment of this issue. They abandoned it. Counsel, let me shift gears since we're already running out of time. Did you file a petition for rehearing when this court remanded this case to get clarification on exactly what this court expected on remanding? We did not, Your Honor. We looked at the law, and the law was that we looked not only at the law, we looked at their brief that said we're not appealing this. They gave us every indication that they were abandoning that issue and they were going back to trial on informed consent only. Why should we file a petition for rehearing? There was no reason for it from our point of view. Had they raised any kind of argument at all in their brief, certainly, Your Honor, we would have asked for clarification. Now, really the trial court on remand at this point is the trial court thinks it's required to provide a new trial on all claims. On all claims. We'll send this back to another jury on professional negligence, and if that jury, once again, if the second jury finds that Dr. Dietrich complied with the standard of care, well, then we're back up here for probably a third appeal on an issue that should have been resolved in the very first appeal. Well, I wasn't on the panel of this court that granted the 308 application, but it looks like to me we're going to be back here on an appeal no matter what happens. So I question whether this court improvidently granted the 308 application. What say you to that? I think, Your Honor, that we had to straighten this out so that we can limit the issues at trial. It would not only save judicial resources, but it's also. I was going to say judicial resources if we're going to end up here on an appeal anyway. Your Honor, in the end, neither party will have to retry the issue of professional negligence, which has been limited solely to conduct involved in the actual delivery of the child. And this removes a very substantial portion of the case for review. The trial will be shorter. The parties will have less expenses. This court, in the event of an appeal, will have narrowed the issues. Well, the other thing, just in time's up, I just would mention that to the extent Justice Turner has a good point, I can just point my colleague, Justice Zimmer, to granting the petition. But that's neither here nor there. A little bit of humor. Thank you, Counsel. Mr. Axelrod, you may proceed. Wait a minute. Did I just get dissed? No, I did. Oh. Good afternoon. May it please the Court. Counsel? David Axelrod, Counsel. The issue before the Court is its interpretation of its own ruling, which was to reverse and remand for a new trial. Yeah. By the way, as I said I would, this has been a little humbling for me, and I apologize to Mr. Unrath, and I will to you as well. Because we've known this for a long time, and apparently one can always learn that I didn't foresee all of this, and perhaps I should have, and I should have made clear. But you're right. That's what it says. But what you should have said, and, you know, the line is, we occasionally are the folks who follow the elephants in the parade. This time I'm the elephant, so I've got to clean up my own mess. So what does it mean? And what should we do here? I can answer both of those questions. Okay. What does it mean? Based upon Supreme Court precedent in Rigdon and other cases, when you entered an order that called for a whole new trial, remand for a new trial, that means it's a trial de novo, which in essence means the first trial never happened. And as a result, your order requires the trial court to have a new trial as to all the issues. The good news, though, is we have a certified question before us, Melissa's heart, the trial judge in this case, Judge Drummond, a very sharp guy. I was wondering, what's Steigman doing this time? And he said, gee, when you certify the question, so it's back before us. And if we were wrong, excuse me, if I was wrong and should have made my mandate more clear, here we are. So let's address the merits. And Mr. Unrath has raised a lot of serious questions, such as, do you know of any other case where, in the absence of a post-trial motion after a negative jury verdict, the party has been able to retry it? Sure. There's the Keene case. And there's the Keene case, which basically says, if there's a directed verdict, there's no need to go back before the judge again.  Here we have a jury verdict on the merits. It wasn't a directed verdict. It was professional negligence. So if, in fact, and that's what I was going to say, let's assume that there was an issue with jury instructions with respect to the professional negligence claim, then I agree and we agree that we had an obligation to bring a post-trial motion on that issue to say to Judge Drummond, you made an error with respect to the instruction on the professional negligence claim. It's a different issue when he enters the directed verdict and then issues an instruction that was suggested by defense counsel and objected to by us, specifically saying, we should be entitled to present all of the evidence to the jury, even if you're taking away the lack of informed consent claim. That objection was made to that instruction. And at that point, to say to the judge in a post-trial motion, well, your directed verdict motion was error, and so everything you did as a result of that directed verdict motion was error, would again, just as in Keene, be appointments. There's a reason. I don't see how that follows. In other words, we have two different counts, I'll call them for lack of a better word. They were all one count. Well, we have the informed consent and professional negligence claims. Sure. The trial court granted the motion for directed verdict by the defense as to the informed consent claim. As to all the pre-birth claims. So there were a number of pre-birth claims. It was also a failure to take a number of tests. It was essentially a failure of the physician to understand that this was likely to be a macrosomic baby. But those all pertained to the informed consent, did they not? They did not. They did not. In fact, the objection to the instruction was that the jury should be able to hear all the evidence and consider all the evidence. And what Judge Drummond did in giving that instruction, which, by the way, it's a 203 instruction, and the 203 instruction is meant for when one party is directed out and not one issue is directed out. So counsel for the defendant revised and modified the instruction. And over our objection, Judge Drummond gave that instruction and essentially told the jury, forget 80% of what you've heard here. All of that's irrelevant. And as soon as that happened, and this is what Judge Drummond ruled when we were before him on the motion on limine. As soon as that happened, that changed, forgive me, if you've ever watched Back to the Future, the time-space continuum changed. Okay. And as a result, I can't tell you that there's going to be a defense verdict or a plaintiff's verdict when you send this back down and all issues go before the jury. No, but here's the thing. I'm picking up on where you are right now. You're arguing to Judge Drummond. You granted the directed verdict with regard to informed consent, and we have all this other evidence pertaining to professional negligence. Correct. Don't give his instruction on telling the jury to disregard this evidence before the birth. And we told him that. You told him that. We objected to that. And the judge says no. Correct. I'm going to give that instruction. And then the jury, on a live, this is not a directed verdict claim, on a live claim on professional negligence, finds it fair to the doctor you lose after a jury trial. Why not, especially if you now are telling us you have preserved an evidentiary issue, which you are again telling us was an important matter, you think, and why the jury may have ruled against you. Why didn't you file a post-trial motion? For the reason I just stated, which is all of it came directed from Judge Drummond's granting the directed verdict motion. And a directed verdict is not something that we need to file a post-trial motion for. If we think you are required to file a post-trial motion in this factual context, do you lose? No. Why not? I don't think so. Well, for one, I don't think you should do that. But for two, those arguments were already raised in the original appeal. Mr. Unrath, in his brief, raised the arguments of waiver and raised the arguments of forfeiture at that point in time. What about his introductory line argument he uses about you? We're just challenging the directed verdict. Well, that's not what we said. No, we did not say that we're just challenging the directed verdict. And if you look at our original brief, I have the copy right here, there's a whole section that says, each and every decision and order which were further steps in the procedural progression of enforcing are otherwise remaining consistent with the court's order, granting in part the defendant's motion for directed verdict should be reversed. And in that we specifically said essentially what we're saying now, which is the whole trial ended up being changed. And as a result, the judgment of September 23rd, 2015, needed to be reversed. Here's the problem, counsel. I don't recall, and I was the author of that case, you're saying you're attacking any aspect of the judgment of the jury on the professional negligence count. And I guess I'm not making my point clear. I don't think we need to have said, well, there was something wrong done with respect to the professional negligence claim. What we're saying is because of the directed verdict and the instruction that went with it, it affected what could happen in that professional negligence claim. Yeah, and you may be right. And in a trial court error, which is why God invented appellate courts, raised the question to us. But you didn't, did you? No, we did. No, no, no. What remedy did you ask? Did you contend that the jury verdict was wrong based upon evidentiary errors and that we should remand on professional negligence? No, not based on evidentiary errors, based on the fact that the directed verdict and instruction took place. And as a result, everything that happened after that was affected. That's what we argued and presented to this court in the first place. And then we requested the relief of a brand new trial on all issues, which is what you granted. So my answer to you is I don't think we had an obligation to file a post-trial motion under this circumstance. My second answer to that is that counsel in the initial appeal made these arguments. This was before this court already. And whether it was your fault or whomever, you enter an order remanding for a new trial. And under the Clemens case, that means that the trial court is then supposed to interpret what you mean by that. And Judge Drummond did that. We think appropriately he did that for the same reasons of what I'm presenting now. And as a result, I think actually, and there's case law specifically on this issue, on the waiver issue, once an issue has been presented to the appellate court and the appellate court then makes a decision, that issue has been decided. Justice, I'm sorry, I can't read it because my eyes, I need water. But what you raise is absolutely correct. Your eyes are as bad as mine, I think. Well, that's what happens when you get to be 61. 62 for me to go ahead. So what should have happened is they should have brought up a petition for rehearing or a motion for clarification or something, instead of waiting to go back to talk about lack of judicial efficiency. The most efficient thing that would have been done, particularly since it's in our brief, asking for a new trial based on the same exact argument I'm making now, is they should have said to you, what do you mean by this? Do you want a trial on all issues? Or even, especially since we've argued the waiver and forfeiture issues, and you didn't specifically address them, but you entered an order that under Illinois Supreme Court cases requires a brand new trial de novo. And my position on that would also be, not only should they have raised the issue before this court, which would have been the best in judicial efficiency, but second, based upon the Supreme Court's rulings on a trial de novo, we couldn't have waived anything. And the reason we couldn't have waived anything is because since it's a trial de novo based on the court's own language, it didn't happen. It's as if it didn't happen, which is why when you have a trial de novo, an order for a new trial without specific instructions, you can even amend the complaint. We can amend the complaint based on the remand of the jury verdict to include other allegations of negligence, so long as they arise and they meet the Porter requirements for being able to relate back under the statute of limitations. So as far as I'm concerned, once you enter that order, it basically says, okay, once Judge Drummond, and correctly so, made this decision, which was erroneous, it affected everything, and now we have to go back to where we started and do this right the second time and make sure that it's done right. I have no idea whether or not there's going to be another appeal. It could be that the case goes in perfectly and there's no error the second time and there could be a verdict for the defendant or there could be a verdict for the plaintiff. I've had the misfortune and good fortune of having cases that go to trial, primarily I try cases that don't get appealed because one side or the other, I've had a defendant not appeal and pay a lot of money because they figured out there was nothing to appeal, and I've been in situations where I've tried a case and the judge, unfortunately for my client and for myself, didn't make any errors. Here we have an error in the middle of the trial after the presentation of the plaintiff's case where the judge not only erroneously grants a directed verdict because of confusion about the St. Demi case, but in addition then gives an instruction and says to the jurors, forget about almost everything you've heard for the last several days, you can only consider this narrow aspect of it. And by doing that, he changed the course of history, so to speak. And what this court did and what you did, and I think correctly so, was to say we have to start all over again because of what happened at the trial court. And under circumstances like this, it doesn't make sense for us to have to go back to Judge Drummond and say your directed verdict was error and as a result your jury instruction was error and as a result we're going to try and get you to say, well there should have been a new trial as to the professional negligence. What good does it do us to ask him for a new trial on professional negligence, have a verdict on that, and then have to come back up here on the informed consent issue? Because even if we win on a post-trial motion, assuming that we had to file one, we're still stuck with only the professional negligence claim and you've already ruled that the informed consent claim needs to go to the jury as well and that Judge Drummond made it there. When you're talking about filing a post-trial motion, you know as an experienced trial lawyer, you're giving the court an opportunity to think about it and consider, but you don't go to the bank betting that you're going to get the motion granted. Nonetheless, it's a procedural step and I'm just wondering why it should be excused here. We have different theories going before the jury. We have informed consent, we have professional negligence. I understand the argument that the trial court, after granting the directed verdict on the informed consent, made a ruling that you believe adversely affected the professional negligence because it told the jury to disregard certain evidence. What I don't understand is why you should be excused from filing a post-trial motion addressing that evidentiary issue regarding the claim you lost. And furthermore, I want to check again, but it is my recollection that you didn't argue on appeal the first time that that decision by the jury was wrong or there was an evidentiary ruling that led to this wrong decision. I don't recall that being argued either. What we did was we argued and presented that because of the directed verdict finding by the judge, everything else that took place after that is all related. It goes back to my point, counsel. I don't know that that's correct. I'm not sure I'm going to buy it, and if I don't buy it, do you lose? Well, I don't agree with that, but I would suggest, Your Honor, that you look at pages 28 and 29 of our original brief. Well, how about the conclusion? What did you ask in your conclusion? I think it was just to vacate, to reverse the grant of the motion for directed verdict. No, that's not true. We asked for vacation of the directed verdict, and we asked for vacation of the final judgment. We asked for reversal of the final judgment, and we asked for a new trial. All of those things were in our conclusion specifically asking for all those things, and I'm happy to get the brief. Okay, we'll get it. It's literally on the last page of the brief, Your Honor. So we asked for all those things, and as you can imagine, we were very pleased when the court granted those things. So I guess the last thing I would say is if you're talking about waiver, I think that they waive. Forfeiture. Or forfeiture. It's not a waiver. Waiver is an intentional relinquishment of a known right. Forfeiture is a procedural default. Sure, I understand, Your Honor. Okay, go ahead. So they have a problem, too. What is that? And that is that they didn't file a petition for rehearing before this court or a motion for clarification. I don't know any court that holds that petitions for rehearing are a requirement to avoid forfeiture. Here's the thing, though. They raise these issues before you in the first appeal. And the case law from the Supreme Court is once an issue is raised in an appeal and then the appellate court makes its ruling, the appellate court has made its ruling. And so they have an obligation then to either go ahead with a whole new trial, if that's what Judge Drummond ruled correctly, or to come back to you and say, you made a mistake. We need you to clarify your mistake. We need to know what it is you're going to do. And I'm sorry I don't have the case that I can get to immediately, but I can get to the case and I can give you the language from the Supreme Court case. But once an issue has been raised on appeal and the appellate court has made its determination, it's res judicata. I mean, it's already been decided. And their obligation is to come back to you and not to go back down to the trial court and get the trial court to rule on a motion in limine. All they had to do was come back to you in the appropriate period of time and say, we don't understand your ruling. Can you please clarify? Was there necessity for a post-trial motion or not? And was there necessity or is the argument that we have in the brief sufficient or not? And they failed to do that. Once they fail to do that, the trial court then is in a perfect position to say, this is how I have to proceed and interpret your ruling. And, you know, honestly, I don't think this appeal should have been taken in the first place. You mean the 308 application? Yes. Yes, I think the 308 application should have been rejected. And we opposed it. But then you wouldn't have had all this fun, Mr. Excellen. I thought you worried just a few minutes ago that there was a pretty good chance we wouldn't see this case again. There may not be an appeal because you guys are going to get a perfect trial when we send it back. Assuming that you send it back for a whole new trial on all issues, you know it's possible that there's going to be a plaintiff's verdict and it's possible that they won't appeal it. And it's pretty likely it's going to be up on appeal again, isn't it? You know what? Well, we know it's not going to be up on whether or not there's an informed consent claim that needs an expert witness. And we know that there were no other factual issues. It's probably not going to be back up against the manifest way as the evidence or for a J&OB. So unless Judge Drummond commits some sort of error, which I think is highly unlikely. There is a sharp cut. I think that there's a really good chance that it won't come back for appeal. And no matter what, there has to be another trial. And we're waiting for this court to make its ruling so that we can try and get some justice for Colin Crim, who lives with a permanent disability. Thank you, counsel. Thank you. Mr. Unrath, rebuttal, sir. With respect, opposing counsel said that it is initial appeal that they requested a new trial on all issues. That's not accurate. As a matter of fact, I have it quoted right here on page 7 of our brief. They said, ask the court to reverse each and every decision and order entered in the trial court, which were further steps in the procedural progression of enforcing or otherwise remaining consistent with the court's order granting the defendant's motion for directed verdict. In other words, they're asking to reverse any and all orders related to the directed verdict. Now, had they said in their conclusion, we are asking for a new trial on all issues, we would have jumped on that with both feet. We would have addressed that. It would have been a major portion of our brief. As Justice Turner mentioned, why didn't you file a petition for rehearing? The reason is we looked at their conclusion. They never asked for a new trial on all issues. Did they make any reference in their conclusion to the professional negligence claim? Absolutely not. None. They asked to reverse all orders that were in some way related to the directed verdict. That's all they asked for. I think it's also important to point out that there is no case law directly on point. So perhaps, Judge Turner, one reason for accepting this appeal is that we may very well have a case of first impression here. Another point. They never linked the failure to perform tests with the actual delivery of the child. They never did that at trial, never did it in the first appeal. It's only come up now in this second appeal. What were the evidentiary issues they raised in the first appeal? In reference to the decision, refresh my recollection. Paragraph three of the first one says, the Crimson appeal argued in trial court erred by granting Dietrich the directed verdict on the issue of informed consent. And two, barring certain medical testimony, because we agree with the Crimson's first argument, we reverse and we're not going to address the second one. What was the certain medical testimony that the trial court erred by barring? They raised an objection to, or a claim of error in when the judge sustained an objection to Dr. Benson's testimony. Dr. Benson went on a bit of a long-winded diatribe about how you measure the fundal weight or estimate the fundal weight. Well, was that testimony limited only to informed consent, or was that testimony conceivably linked as well to the professional negligence claim? At the time of trial and all the way through this case until they filed their appellee brief, this was all focused solely on the informed consent issue. There was nothing suggesting that this had anything to do with the professional negligence claim. So his name was Dr. Benson? Yes. His testimony was expert testimony regarding the informed consent claim? Absolutely, Your Honor. And no matter what, even if it was connected, even if it was related, isn't that a reason why you should file a post-trial motion and give the court a chance to review this in the first instance? You heard my discussion with Mr. Axelrod where I asked him, I don't know that there's any case law specific about, are these different matters? Are these inextricably linked so that when the directed verdict was granted, he still had to file a post-trial motion attacking the jury's verdict on professional negligence? Is that your position, that they are different matters and post-trial motions required? We can only say how they presented their case to the court, which was that they presented the case as being two completely separate matters. That's the way that we took it, and that's the way we prepared our defense. It's only now, here in the second appeal, that they have linked these allegations of failure to perform tests with professional negligence. It's never happened before. It didn't happen in the trial court. And if this was an issue, they should have filed a post-trial motion and let the court figure that out and get that problem resolved at the trial court. What about his argument that, gee, maybe the trial court would grant it, and then we'd have to try that and still want to appeal the directed verdict? Well, if that issue had been raised in a post-trial motion, yes. Even if the post-trial motion was denied, that issue would have come up in the first appeal, and we would have responded to it. I see that my time is up. Again, on behalf of Dr. Dietrich, I ask the court to reverse the trial court's ruling on the motion in limiting. Thank you. We'll take this to the advisement. Mr. Axelrod, Mr. Emmerath, I will end this. Again, I apologize to all parties. I should have been more clear. And I appreciate your vigorous arguments. They were very helpful. And this is an interesting, difficult case, and we'll be taking it up to advisement. Thank you.